**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| 4KIDS ENTERTAINMENT, INC., et al.,[1] | ) | Case No. 11-11607 (SCC) |
| Debtors. | ) | Jointly Administered |

**ORDER (I) AUTHORIZING THE SALE OF THE DEBTORS' YU-GI-OH!- AND CW NETWORK-RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated April 17, 2012 (the "Motion"), of 4Kids Entertainment, Inc. and its debtor affiliates (each a "Debtor" and collectively, the "Debtors"), pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 6004-1 and 6006-1 of the Local Rules for the Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules") and this Court's General Order M-383, Adoption of Guidelines for the Conduct of Asset Sales, dated November 18, 2009 (the "Sale Guidelines"), for, among other things, entry of an order (this "Order") authorizing the Debtors to (i) sell certain assets free and clear of all liens, claims, encumbrances and other interests and (ii) assume and assign certain executory contracts and unexpired leases; and the Court having entered an order on April 30, 2012 [Docket No. 613] (the "Bid Procedures Order")[2]

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: 4Kids Entertainment, Inc. (1380); 4Kids Ad Sales, Inc. (6309); 4Kids Digital Games, Inc. (7645); 4Kids Entertainment Home Video, Inc. (0094); 4Kids Entertainment Music, Inc. (6311); 4Kids Entertainment Licensing, Inc. (3342); 4Kids Productions, Inc. (3593); 4Kids Technology, Inc. (8181); 4Kids Websites, Inc. (7563); 4Sight Licensing Solutions, Inc. (8897); The Summit Media Group, Inc. (2061); and World Martial Arts Productions, Inc. (8492).

[2] All capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Bid Procedures Order or the APA, as the case may be.

(i) approving bid procedures (the "Bid Procedures"), the Debtors' entry into the Asset Purchase Agreement, dated April 25, 2012, by and among the Debtors and Kidsco Media Ventures LLC (the "Saban Purchaser") (the "April 25 APA") and the bid protections set forth in the April 25 APA in connection with the sale of the Purchased Assets, (ii) approving the form and manner of notice, including establishing an objection deadline for the sale of the Debtors' assets, (iii) scheduling an auction (the "Auction") and a hearing to consider approval of the sale of the Debtors' assets (the "Sale Hearing") and (iv) approving Assumption and Assignment Procedures (as defined in the Motion); and the Sale Hearing having been held on June 26, 2012; and upon the record of the Sale Hearing and all of the proceedings had before the Court; and the Court having reviewed the Motion and all affidavits, declarations, responses, and objections thereto and found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**[3]

## Jurisdiction and Venue

A. This Court has jurisdiction over the Motion, the APA (as defined below), the Debtors' sale of the Purchased Assets (as defined in the APA) to the Purchasers (as defined below) (the "Sale Transaction"), the assumption and assignment of the Assigned Contracts, and all of the other transactions contemplated by the APA pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**Statutory Predicates**

B. The statutory predicates for the relief requested in the Motion are sections 105, 363, 365, 503 and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9007 and 9014 of the Bankruptcy Rules, and Rules 6004-1 and 6006-1 of the Local Bankruptcy Rules.

**Compliance with Bid Procedures Order**

C. As demonstrated by (i) the declarations and affidavits filed in connection with the Motion and the Sale Hearing, (ii) the testimony and other evidence proffered or introduced prior to or at the Sale Hearing and (iii) the representations of counsel made on the record at the Sale Hearing, the Debtors have thoroughly and fairly marketed the Purchased Assets and conducted the related sale process in good faith and in compliance in all respects with the Bid Procedures and the Bid Procedures Order. All interested persons and entities have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence, (ii) submit higher or otherwise better bids to purchase the Purchased Assets, and (iii) object or be heard with respect to the Motion and the relief granted by this Order. The Bid Procedures approved by the Bankruptcy Court were designed, negotiated and implemented in good faith, were substantively and procedurally fair to all parties, and obtained the highest and best value for the Purchased Assets for the Debtors, their creditors and their estates.

**The Sale Process for the Purchased Assets**

D. The Bid Procedures established a deadline for Qualified Bids of May 31, 2012 at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline"). Prior to the Bid Deadline, a bid was received from 4K Acquisition Corporation (the "Konami Purchaser", and together with the Saban Purchaser, the "Purchasers", and each of the Konami Purchaser and the Saban Purchaser, a "Purchaser"). On June 1, 2012, the Debtors, in consultation with the official committee of unsecured creditors in these chapter 11 cases (the "Committee"), determined that the Konami Purchaser's bid was a Qualified Bid for purposes of the Bid Procedures and notified

the Purchasers that the Auction would commence on June 5, 2012. On June 5, 2012, the Debtors commenced the Auction for the Purchased Assets with the Konami Purchaser and the Saban Purchaser as bidders. After a number of rounds of competitive bidding the Debtors, in consultation with the Committee, considered a joint bid for the Purchased Assets by the Saban Purchaser and the Konami Purchaser (the "Joint Bid"). The concept of a joint transaction had been explored by the Debtors prior to the Bid Deadline, at a time when it appeared that there would not be a competitive auction. The Joint Bid was never discussed by the Saban Purchaser and the Konami Purchaser directly until the Debtors and the Committee authorized such discussions at the Auction as a means to increase the value to the Debtors and their estates. The Debtors, in consultation with the Committee, adjourned the Auction in order to document the Joint Bid. The Purchasers agreed to keep the last two leading individual bids open pending closing of the transactions contemplated by the Joint Bid. The Joint Bid was memorialized in that certain Asset Purchase Agreement, dated June 24, 2012, by and among the Debtors, the Saban Purchaser and the Konami Purchaser (as amended, supplemented or otherwise modified from time to time, the "APA," filed as Docket No. 740). The Debtors have determined, in consultation with the Committee, that the Joint Bid as memorialized in the APA is the highest and best bid for the Purchased Assets and that the Purchasers are the Successful Bidder.

**Notice**

E. As evidenced by the affidavits and certificates of service and publication previously filed with the Court, and based on the representations of counsel at the Bid Procedures Hearing and the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Bid Procedures, the Assumption and Assignment Procedures, the Bid Procedures Hearing, the proposed sale of the Purchased Assets, the assumption and assignment of the Assigned Contracts, all of the other transactions contemplated by the APA, and the Sale Hearing have been provided in accordance with Bankruptcy Rules 2002(a), 6004(a), 6006(c) and 9014,

and all applicable provisions of the Bankruptcy Code and the Local Rules and in compliance with the Bid Procedures Order; (ii) such notice was good, sufficient, reasonable, and appropriate under the particular circumstances of these chapter 11 cases, and reasonably calculated to reach and apprise all holders of liens, claims, encumbrances, and other interests, including, without limitation, any holder asserting any rights or claims based on any taxes or successor or transferee liability, about the Motion, the Bid Procedures, the Assumption and Assignment Procedures, the April 27, 2012 hearing at which this Court considered entry of the Bid Procedures, the proposed sale of the Purchased Assets, the assumption and assignment of the Assigned Contracts, all of the other transactions contemplated by the APA, and the Sale Hearing; and (iii) no other or further notice of the Motion, the Bid Procedures, the Assumption and Assignment Procedures, the Bid Procedures Hearing, the proposed sale of the Purchased Assets, the assumption and assignment of the Assigned Contracts, all of the other transactions contemplated by the APA, the Sale Hearing, or any matters in connection therewith is or shall be required. With respect to entities whose identities are not reasonably ascertainable by the Debtors, publication of the Publication Notice (as defined in the Motion) in the national edition of the *Wall Street Journal* on May 9, 2012 was sufficient and reasonably calculated under the circumstances to reach such entities.

**Corporate Authority**

F. Each Debtor (i) has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) has all of the necessary corporate power and authority to consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts (collectively, the "Transactions"), (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtors of the Transactions and (iv) subject to entry of this Order, needs no consents or approvals, other than those expressly set forth in the APA, to consummate the Transactions.

**Good Faith**

G. Each Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision and any other applicable or similar provisions under bankruptcy and non-bankruptcy law. Each Purchaser has at all times acted in good faith within the meaning of section 363(m) of the Bankruptcy Code in consummating the Transactions. The APA and the Transactions were negotiated, proposed and entered into by the Debtors and the Purchasers without collusion, in good faith and from arm's length bargaining positions. None of the Debtors, the Saban Purchaser or the Konami Purchaser, or its or their respective agents, affiliates, officers, directors, members, personnel, representatives, attorneys and advisors, has engaged in any conduct that would cause or permit the avoidance of the APA or any of the Transactions, or the imposition of costs, fees, expenses or damages under section 363(n) of the Bankruptcy Code. None of the Saban Purchaser or the Konami Purchaser, or its or their agents, affiliates, officers, directors, members, personnel, representatives, attorneys or advisors, is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

**Business Justification**

H. The Debtors have demonstrated good, sufficient and sound business reasons and compelling circumstances to enter into the APA and to consummate the Transactions, and such actions are appropriate and reasonable exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and creditors, and other parties in interest. Such business reasons include, but are not limited to, (i) the APA constitutes the highest or otherwise best offer for the Purchased Assets; (ii) the APA presents the best opportunity to realize the value of the Debtors on a going concern basis and avoid any potential decline and devaluation of the Debtors' business; and (iii) unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the APA, the estates' recoveries may be diminished.

The Debtors' determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a sound and reasonable exercise of the Debtors' business judgment.

I. The terms and conditions of the APA, including, without limitation, the consideration to be realized by the Debtors pursuant to the APA, are fair and reasonable. Approval of the Motion, the APA, and the Transactions are in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

J. The Purchasers are the Successful Bidder for the Purchased Assets in accordance with the Bid Procedures Order. The Purchasers have complied in all respects with the Bid Procedures Order and any other applicable order of this Court in negotiating and entering into the APA, and the Transactions likewise comply with the Bid Procedures Order and any other applicable order of this Court.

**No Fraudulent Transfer**

K. The consideration provided by the Purchasers for the Purchased Assets pursuant to the APA (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative (including, without limitation, an individual bid by either of the Saban Purchaser or the Konami Purchaser), and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession and the District of Columbia.

L. Neither Purchaser is a mere continuation of the Debtors or their estates, there is no continuity or common identity between either of the Purchasers and any of the Debtors, and there is no continuity of enterprise between either of the Purchasers and any of the Debtors. Neither Purchaser is holding itself out to the public as a continuation of any of the Debtors. Neither Purchaser is a successor to any of the Debtors or their estates, and none of the Transactions amounts to a consolidation, merger or de facto merger of either Purchaser with or

into any of the Debtors. Furthermore, nothing herein or in the APA shall create any relationship of agency, partnership, joint venture or trust between the Saban Purchaser and the Konami Purchaser. None of the Transactions is being undertaken for the purpose of escaping liability for any of the Debtors' debts or hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.

**Free and Clear**

M. The transfer of the Saban Purchased Assets to the Saban Purchaser and the transfer of the Konami Purchased Assets to the Konami Purchaser will be legal, valid, and effective transfers of the respective Purchased Assets. The transfer of (a) the Saban Purchased Assets will vest the Saban Purchaser with all right, title, and interest of the Debtors to the Saban Purchased Assets, and (b) the Konami Purchased Assets will vest the Konami Purchaser with all right, title, and interest of the Debtors to the Konami Purchased Assets, and in each case free and clear of all Claims (as defined in Paragraph 8 hereof) (except as expressly provided in the APA with respect to the Saban Assumed Liabilities and the Konami Assumed Liabilities (as each are defined in the APA), respectively), including, without limitation, (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or a Purchaser's interest in the Purchased Assets, or any similar rights and (ii) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, without limitation, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership and (b) all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or their predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement

of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, without limitation, claims otherwise arising under federal or state tax laws or doctrines of successor or transferee liability. For the avoidance of any doubt, and notwithstanding anything to the contrary herein, the transfer of the Saban Purchased Assets to the Saban Purchaser shall be free and clear of all Konami Assumed Liabilities, and the transfer of the Konami Purchased Assets to the Konami Purchaser shall be free and clear of all Saban Assumed Liabilities.

N. The Debtors may transfer the Purchased Assets free and clear of all Claims (except as expressly provided in the APA with respect to the Assumed Liabilities), including, without limitation, rights or claims based on any successor or transferee liability, because one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those (i) holders of Claims and (ii) non-Debtor parties to the Assigned Contracts, who did not object or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those (i) holders of Claims and (ii) non-Debtor parties to the Assigned Contracts who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

O. Neither Purchaser would have entered into the APA and neither would consummate the Transactions (i) if the transfer of the Purchased Assets was not free and clear of all Claims (except as expressly provided in the APA with respect to the Assumed Liabilities) or (ii) if a Purchaser would, or in the future could, be liable for any such Claims (except as expressly provided in the APA with respect to the Assumed Liabilities) (collectively, the "<u>Retained Liabilities</u>"). Neither Purchaser will consummate the Transactions unless this Court expressly orders that neither of the Purchasers nor its or their affiliates, or their respective present or contemplated members or shareholders, or the Purchased Assets, will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or

by payment, setoff, or otherwise, directly or indirectly, any Claims, including, without limitation, rights or claims based on any taxes, successor or transferee liability, or Retained Liabilities.

P. Not transferring the Purchased Assets free and clear of all Claims (except as expressly provided in the APA with respect to the Assumed Liabilities) would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Claims would be of substantially less benefit to the Debtors' estates.

**Validity of Transfer**

Q. The consummation of the Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the APA.

R. The Purchased Assets constitute property of the Debtors' estates and good title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors are the sole and lawful owners of the Purchased Assets, and no other person has any ownership right, title, or interest therein.

**Assigned Contracts**

S. The assumption and assignment of the Assigned Contracts free and clear of all Claims (except as expressly provided in the APA with respect to the Assumed Liabilities), pursuant to the terms of this Order, is integral to the Transactions and is in the best interests of the Debtors, their estates and creditors, and all other parties in interest, and represents a sound and reasonable exercise of the Debtors' business judgment.

T. The Debtors have met all requirements of Section 365(b) of the Bankruptcy Code for each of the Assigned Contracts. The Debtors have (a) cured and/or

provided adequate assurance of cure of any default existing prior to the Closing (as defined in the APA) under all of the Assigned Contracts, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code; and (b) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the Assumed Contracts, within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code. Moreover, the Saban Purchaser or Konami Purchaser, as applicable under the APA, has provided adequate assurance of its future performance of and under the applicable Assigned Contracts, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code. The assignment of each Assigned Contract will vest the Konami Purchaser or the Saban Purchaser, as the case may be, with all right, title and interest of the Debtors under such Assigned Contract, in each case free and clear of all Claims (except as expressly provided in the APA with respect to the Saban Assumed Liabilities and the Konami Assumed Liabilities).

**<u>Compelling Circumstances for an Immediate Sale</u>**

U. To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the Transactions occur within the time constraints set forth in the Motion, the Bid Procedures Order, and the APA because, among other things, (i) the timing of the Transactions will enable the Purchasers to take advantage of the children's advertising "upfront" market, (ii) the CW Network has agreed to a negotiated cap on the amount of its claims, which will provide a substantial benefit to the Debtors, and (iii) the Debtors have moved on an aggressive sale timetable since the settlement of Yu-Gi-Oh! litigation to sell the Purchased Assets and to conclude these chapter 11 cases.

V. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Transactions prior to, and outside of, a chapter 11 plan because, among other things, the Debtors' estates will suffer irreparable harm if the relief requested in the Motion

is not granted on an expedited basis. The Transactions neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors, and therefore, do not constitute a sub rosa plan.

W. Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the purchase price under the APA, the consummation of the Transactions constitutes a reasonable and sound exercise of the Debtors' business judgment.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

## General Provisions

1. The Motion is granted as provided herein, and entry into and performance under, and in respect of, the APA and the consummation of the Transactions is authorized and approved.

2. Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice.

3. This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference.

## Approval of the APA

4. The APA, all ancillary documents, the Transactions, and all the terms and conditions thereof, are approved. If there is any conflict between the APA and this Order, this Order shall govern.

5. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform their obligations under, and comply with the terms of, the APA and consummate the Transactions, pursuant to, and in accordance with, the terms and provisions of the APA and this Order.

6. The Debtors are authorized and directed to execute and deliver, and

empowered to perform under, consummate, and implement, the APA, together with all additional instruments and documents that the Debtors or either Purchaser deems necessary or appropriate to implement the APA and effectuate the Transactions, and to take all further actions as may reasonably be required by either Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchasers or reducing to possession the Purchased Assets, or as may be necessary or appropriate to the performance of any other obligations as contemplated by the APA.

7. This Order and the APA shall be binding in all respects upon the Debtors, their affiliates, all known and unknown creditors of, and holders of equity security interests in, any Debtor, including, without limitation, any holders of Claims, all non-Debtor parties to the Assigned Contracts, the Purchasers, the Purchased Assets, all interested parties, each of their successors and assigns, and any trustees appointed in the Debtors' chapter 11 cases or upon the conversion of any of such cases to cases under chapter 7 of the Bankruptcy Code, and shall not be subject to rejection. Nothing contained in any plan confirmed in any of the Debtors' chapter 11 cases, any order confirming any such plan, any order converting any of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, or any order dismissing any of the Debtors' bankruptcy cases shall conflict with or derogate from the provisions of the APA or this Order.

**<u>Transfer of the Purchased Assets Free and Clear</u>**

8. Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, except as otherwise expressly provided in the APA and the terms of this Order with respect to Assumed Liabilities, (a) (i) the Saban Purchased Assets shall be transferred to the Saban Purchaser, and (ii) the Konami Purchased Assets shall be transferred to the Konami Purchaser, and (b) the Purchased Assets shall be, free and clear of all claims, Liens, liabilities, interests, rights and encumbrances, including, without limitation, the following: all mortgages,

restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor liability (all of the foregoing collectively being referred to in this Order as "Claims", and, as used in this Order such term includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof), with all such Claims to attach to the consideration to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. As used in this Order, the

term "Liens" includes, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof.

9. Except as expressly permitted or otherwise specifically provided by the APA or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other creditors, holding Claims of any kind or nature whatsoever, against or in a Debtor, or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Purchased Assets prior to the Closing, or the Transactions, are forever barred, estopped, and permanently enjoined from asserting such Claims against either Purchaser, its or their successors and assigns, its or their respective property or the Purchased Assets.

10. This Order (a) shall be effective as a determination that, as of the Closing, (i) no Claims (except as expressly provided in the APA with respect to the Assumed Liabilities) shall be assertable against either Purchaser, its or their affiliates, or its or their respective present or contemplated members or shareholders, successors, or assigns, or any of its or their respective assets (including, without limitation, the Purchased Assets), (ii) (a) the Saban Purchased Assets shall have been transferred to the Saban Purchaser, and (b) the Konami Purchased Assets shall have been transferred to the Konami Purchaser, in each case free and clear of all Claims (except as expressly provided in the APA with respect to the Saban Assumed Liabilities or the Konami Assumed Liabilities, as the case may be), and (iii) the transfers described herein have been effected and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of

mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

11. The transfer of the Purchased Assets to the Purchasers in accordance with the APA constitutes a legal, valid, and effective transfer of the Purchased Assets and shall vest (i) the Saban Purchaser with all right, title, and interest of the Debtors in and to the Saban Purchased Assets, and (ii) the Konami Purchaser with all right, title, and interest of the Debtors in and to the Konami Purchased Assets, and in each case free and clear of all Claims (except as expressly provided in the APA with respect to the Saban Assumed Liabilities or the Konami Assumed Liabilities, as the case may be), as set forth in section 363(f) of the Bankruptcy Code.

12. On the Closing Date (as defined in the APA), each of the Debtors' creditors and any other holder of a Claim (except as expressly provided in the APA with respect to the Assumed Liabilities), is authorized and directed to execute such documents and take all other actions as may be necessary to release its Claim in the Purchased Assets, if any, as such Claim may have been recorded or may otherwise exist.

13. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing a lien, claim, encumbrance, or other interest in the Debtors or the Purchased Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens, claims,

encumbrances, or other interests which the person or entity has with respect to the Debtors, the Purchased Assets, or otherwise, then (a) (i) the Debtors and the Saban Purchaser are each authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors and the Saban Purchased Assets, and (ii) the Debtors and the Konami Purchaser are each authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors and the Konami Purchased Assets, and (b) (i) the Saban Purchaser is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Claims whatsoever in or against the Debtors and the Saban Purchased Assets, and (ii) the Konami Purchaser is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Claims whatsoever in or against the Debtors and the Konami Purchased Assets.

14. On or prior to the Closing Date, all persons or entities in possession of any of the Purchased Assets are directed to surrender possession of such Purchased Assets to the Debtors.

15. Following the Closing Date, none of the Debtors, their affiliates, or any holder of any Claim (except as expressly provided in the APA with respect to the Assumed Liabilities) shall interfere with (i) the Saban Purchaser's title to, or use and enjoyment of, the Saban Purchased Assets, or (ii) the Konami Purchaser's title to, or use and enjoyment of, the Konami Purchased Assets, and in either case based on, or related to, any such Claim, or based on any actions the Debtors may take in these chapter 11 cases.

16. All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Saban Purchaser and the Konami Purchaser, as the case may be, in accordance with the APA and this Order.

17. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of these chapter 11 cases or the consummation of the Transactions.

**Assumption and Assignment of the Assigned Contracts**

18. Except as otherwise expressly provided in the APA or this Order, upon the Closing Date, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are authorized to (a) assume each of the Assigned Contracts and assign the (i) Saban Transferred Agreements (as defined in the APA) to the Saban Purchaser, and (ii) Konami Transferred Agreements to the Konami Purchaser, and in each case free and clear of all Claims (except as expressly provided in the APA with respect to the Assumed Liabilities) and (b) execute and deliver to each Purchaser such documents or other instruments as may be reasonably requested by such Purchaser to assign and transfer the respective Assigned Contracts to such Purchaser.

19. The amounts, if any, determined as necessary to be paid upon assumption of the Assigned Contracts pursuant to the Assumption and Assignment Procedures (the "Cure Amounts") are the sole amounts necessary to be paid upon assumption of the Assigned Contracts under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code. Upon the payment of the Cure Amounts, if any, by the Debtors, the Assigned Contracts shall remain in full force and effect, and no default shall exist under the Assigned Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default. The Cure Amounts shall not be subject to further dispute or audit, including, without limitation, any based on performance prior to the Closing Date, irrespective of whether such Assigned Contract contains an audit clause. For the avoidance of doubt, neither Purchaser shall be liable to the counterparties to the Assigned Contracts except as expressly provided in the APA or this Order.

20. Any provisions in any Assigned Contract that prohibit or condition the Debtors' assumption or assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the Debtors' assumption or assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.

21. Each Assigned Contract constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code and all requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchasers of the Assigned Contracts have been satisfied. Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, (i) (a) the Saban Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Saban Transferred Agreements, and (b) the Konami Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Konami Transferred Agreements, (ii) (a) the Saban Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Saban Transferred Agreements, and (b) the Konami Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Konami Transferred Agreements, and (iii) the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

22. Each Purchaser has provided adequate assurance of future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

23. There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Debtors or the Purchasers as a result of the assumption, assignment and sale of the Assigned Contracts. The validity of the Transactions shall not be affected by any

dispute between any of the Debtors or their affiliates and another party to a Assigned Contract regarding the payment of any amount, including any Cure Amount under the Bankruptcy Code. Upon assignment to the respective Purchaser, the relevant Assigned Contracts shall be valid and binding, in full force and effect and enforceable by such Purchaser in accordance with their respective terms.

24. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assigned Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the relevant Purchaser any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of and including the Closing Date under the APA or arising by reason of the consummation of Transactions. Any party that may have had the right to consent to the assignment of a Assigned Contract is deemed to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if such party failed to object to the assumption and assignment of such Assigned Contract.

**Related Relief**

25. None of the Purchasers, its or their present or contemplated members or shareholders, its or their respective successors or assigns, or any of the foregoing's respective affiliates, agents, officials, personnel, representatives, attorneys or advisors shall have any liability for any Claim assertable against the Debtors or related to the Purchased Assets (except as expressly provided in the APA with respect to the Assumed Liabilities). Neither Purchaser shall be deemed, as a result of any action taken in connection with the APA, or any of the Transactions, or the documents ancillary thereto or contemplated thereby or in connection with the transfer of the Purchased Assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors, (b) have, de facto or otherwise, merged with or into the Debtors, or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors.

Without limiting the foregoing, neither Purchaser shall have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Claims, including, without limitation, under any theory of successor or transferee liability, de facto merger or continuity, environmental, tax, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted, or unasserted, fixed or contingent, liquidated or unliquidated.

26. Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against either Purchaser, its or their past, present or contemplated members or shareholders, its or their respective predecessors, successors and assigns or the Purchased Assets, with respect to any Claim against the Debtors (except as expressly provided in the APA with respect to the Assumed Liabilities), including, without limitation, the following actions (a) commencing or continuing any action or other proceeding pending or threatened against the Debtors as against either Purchaser or its or their successors, assigns, affiliates, or its or their respective assets, including, without limitation, the Purchased Assets, (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtors as against either Purchaser or its or their successors, assigns, affiliates, or their respective assets, including, without limitation, the Purchased Assets, (c) creating, perfecting, or enforcing any lien, claim, interest, or encumbrance against the Debtors as against either Purchaser or its or their successors, assigns, affiliates, or its or their respective assets, including, without limitation, the Purchased Assets, (d) asserting any setoff, right of subrogation, or recoupment of any kind for any obligation of any of the Debtors as against any obligation due either Purchaser or its or their successors, assigns, affiliates, or its or their respective assets, including, without limitation, the Purchased Assets , (e) commencing or continuing any action, in any manner or place, that does

not comply, or is inconsistent with, the provisions of this Order, or the agreements or actions contemplated or taken in respect thereof, or (f) revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with such assets.

27. The Purchasers have given fair and substantial consideration under the APA for the benefit of the Debtors and their creditors and estates. The consideration provided by the Purchasers for the Purchased Assets is greater than the liquidation value of the Purchased Assets, and shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

28. The consideration provided by the Purchasers for the Purchased Assets under the APA is fair and reasonable, and the Transactions may not be avoided under section 363(n) of the Bankruptcy Code.

29. This Order (a) shall be effective as a determination that, except as expressly provided in the APA with respect to the Assumed Liabilities, on or prior to the Closing Date, all Claims existing as to the Debtors with respect to the Purchased Assets have been unconditionally released and terminated, and that the transfers described in this Order have been effected, and (b) shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

30. Each and every federal, state, and local governmental agency or

department is authorized to accept any and all documents and instruments necessary or appropriate to consummate the Transactions.

31. The Transactions are undertaken by the Purchasers without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's length, and accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the Transactions shall not affect the validity of such transactions, unless such authorization is duly stayed pending such appeal. Each Purchaser is a purchaser in good faith and each such Purchaser and its respective agents, officials, personnel, representatives, and advisors are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

32. Notwithstanding anything to the contrary in the Bid Procedures Order, the Bid Procedures or otherwise, the Saban Purchaser has waived any right or entitlement to a Breakup Fee and/or Expense Reimbursement, and no Breakup Fee and/or Expense Reimbursement shall be paid to any party in connection with the Transactions.

33. As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately. The provisions of Bankruptcy Rules 6004(h) and 6004(d) staying the effectiveness of this Order for fourteen (14) days are hereby waived, and this Order shall be effective, and parties may consummate the Transactions, immediately upon entry of this Order. Time is of the essence in closing the Transactions, and parties to the Transactions shall be authorized to close as soon as they decide to do so, consistent with the terms of this Order and the APA.

34. No law of any state or other jurisdiction relating to bulk sales or similar laws shall apply in any way to the Transactions, the Motion, and this Order.

35. Except as set forth in the APA, there are no brokers involved in consummating the Transactions, and no additional brokers' commissions are due.

36. As set forth in the APA, following the Closing Date, each of the Purchasers shall comply in all material respects with the Debtors' privacy policy governing or related to personal data and "personally identifiable information" as such term is defined in the Bankruptcy Code.

37. The terms and provisions of the APA and this Order shall inure to the benefit of the Debtors, their estates, and their creditors, each Purchaser, and each of the foregoing's respective agents, officials, personnel, representatives, attorneys and advisors.

38. The failure to specifically include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

39. The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates. Any such proposed modification, amendment, or supplement that does have a material adverse effect on the Debtors' estates shall be subject to further order of the Court, on appropriate notice.

40. The provisions of this Order are nonseverable and mutually dependent on each other.

41. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion or the Transactions, the terms of this Order shall govern.

43. This Court retains exclusive jurisdiction to interpret, enforce and implement the terms and provisions of this Order, the APA, all ancillary documents, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed

in connection therewith, in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the respective Purchasers, (b) resolve any disputes arising under or related to the APA, except as otherwise provided therein, (c) interpret, implement, and enforce the provisions of this Order, and (d) protect the Purchasers against any of the Retained Liabilities or the assertion of any Claim against the Purchased Assets.

Dated: June 26, 2012
New York, New York

*/s/ Shelley C. Chapman*
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE